UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TIMOTHY L. HUGGINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-01046-SLD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

ORDER

Plaintiff Timothy L. Huggins appeals the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* This matter comes before the Court on Plaintiff's Motion for Summary Judgment, ECF No. 6, and Defendant's Motion for Summary Affirmance, ECF No. 10. For the following reasons, both Motions are GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

I. **Facts**

Timothy Huggins has a high school education, R. 48, and has previously worked as a factory welder, delivery sales driver, and cook, R. 155. In his most recent job, Huggins earned about $41,000 per year as a factory welder for Caterpillar. R. 140. Around June 23, 2009, Huggins began reporting symptoms including high blood pressure, anxiety, sleeping trouble, dizziness, and headaches. R. 377–80. As of August 4, 2009, Huggins reported that he had ceased working entirely due to his dizziness and other medical conditions. R. 383. Specifically,

1

Huggins claims, he cannot work due to difficulties driving, unpredictable dizzy spells, and leg swelling and pain that prevents him from standing or sitting for extended periods and requires him to elevate his legs three to four hours each day. *See* R. 48, 50, 53–54.

He also claims to have breathing problems, chronic pain from a rib injury, memory and concentration difficulties, and severe daytime fatigue due to sleeping only two to three hours per night. R. 48–49, 55, 58. Because he sleeps so little each night, he takes a 30 to 40 minute nap each day. R. 59. Huggins claims to experience shortness of breath and dizziness when climbing stairs; to have difficulty walking more than a block due to windedness and cramping; and to be unable to do more than simple exercises that do not raise his heart rate. *See* R. 47–49, 53–54, 60. He has been diagnosed as obese, R. 654, and weighed 333 pounds as of July 1, 2011, R. 46.

Huggins lives with his wife, who performs most of the household chores. R. 56–57. He does not do any activities lasting more than 15 to 20 minutes, and watches television for most of the day. *Id.* He only drives a few times per week due to his dizziness, which he said has also caused him to fall down his stairs. R. 47, 55.

## II. Procedural History

Huggins filed a claim for Disability Insurance Benefits on January 12, 2010, for a period of disability beginning on June 23, 2009. R. 153–62. Huggins claimed that his ability to work was limited by his reactive airway disease, chronic obstructive pulmonary disease ("COPD"), obesity, obstructive sleep apnea, deep vein thrombosis ("DVT"), dizziness of unknown etiology, and pain related to a left rib fracture. R. 154. His application was initially denied on April 15, 2010. R. 17. Huggins asked the Social Security Administration to reconsider his application and was denied a second time on August 5, 2010. *Id.* He then requested a hearing, which was held on July 1, 2011, with Administrative Law Judge ("ALJ") Robert H. Schwartz. R. 42.

The ALJ found that Huggins had six severe impairments—reactive airway disease, COPD, obesity, obstructive sleep apnea, DVT, and dizziness of unknown etiology—as well as two impairments that did not qualify as "severe": continuing pain due to a rib fracture and a history of hypertension. R. 19–20. ALJ Schwartz also found that Huggins retained the Residual Functional Capacity ("RFC") to lift, carry, push, and/or pull no more than 20 pounds occasionally and 10 pounds frequently; to stand and/or walk at least two hours in an eight hour workday; to occasionally climb ramps or stairs, but not ladders, ropes, or scaffolds; and that Huggins must avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, and concentrated exposure to workplace hazards. R. 21. ALJ Schwartz found that although Huggins is unable to perform any past relevant work, there are jobs existing in significant numbers in the national economy that he can perform, such as eyewear assembler, circuit board screener, or document preparer/telephone clerk. R. 27–28.

As a result of this analysis, ALJ Schwartz determined that Huggins was not disabled, as defined in the Social Security Act, from June 23, 2009, through July 15, 2011. R. 28. On July 25, 2011, Huggins requested a review of the ALJ's decision by the Appeals Council. R. 130. The Appeals Council denied Huggins's request for review on October 11, 2012, making the ALJ's decision final. R. 5. Huggins filed the instant action on January 31, 2013, requesting the Court's review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's

role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the Court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Although great deference is afforded to the determination made by the ALJ, the Court does not merely rubber stamp the ALJ's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). The ALJ has a duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Scott*, 297 F.3d at 595. Though the ALJ "need not discuss every piece of evidence in the record, he must confront the

evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)). If there is an error of law, reversal is warranted "irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

## II.     Entitlement to Benefits

In order to be entitled to DIB, a claimant must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the claimant:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2, or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the claimant is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 requires the ALJ to proceed to step 4, where the ALJ will make a finding about the claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC "measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied." *Bowen v. New York*, 476 U.S. 467, 471 (1986) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). If, on the other hand, the claimant cannot perform his past relevant work, then the RFC is used in step 5 to determine whether the plaintiff can adjust to other work. 20 C.F.R. § 404.1520(e).

The claimant has the burden of production and persuasion at steps 1 through 4. But once the claimant shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

In determining that there were still some jobs Huggins could perform, the ALJ found that Huggins's conditions were not as debilitating as both he and his treating physicians claimed. Huggins argues that the ALJ's determination should be reversed because he (1)

improperly rejected Huggins's treating physicians' opinions, and (2) erroneously rejected Huggins's testimony regarding the extent of the limitations imposed by his impairments. Pl.'s Mem. in Supp. Mot. Summ. J. 10–17, ECF No. 7.

I.  **Weighing Medical Opinions**

In finding that Huggins was not totally incapable of work, the ALJ rejected (1) Dr. Athir Hajjar's opinion that Huggins required two to three unscheduled breaks throughout the day and would have to miss work more than three times per month, and (2) Dr. James Morse's opinion that Huggins was limited in arm and hand use, could not carry any weight, and required extra breaks one to two times per hour. R. 26, 898–912. Huggins argues that the ALJ refused to give these opinions controlling weight without sufficient basis, and even if not entitled to controlling weight, the ALJ failed explain why he did not grant them any measure of deference. Pl.'s Mem. in Supp. Mot. Summ. J. 10–12.

A. **Standards for Evaluating Medical Opinions**

In order to determine a claimant's RFC, an ALJ must determine what weight to give the opinions of his treating physicians. 20 C.F.R. § 404.1527. The general rule is that a treating physician's opinion is entitled to controlling weight if it is supported by medical evidence and is not inconsistent with other evidence in the record. *Id.* § 404.1527(c)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). A treating physician's opinion, however, "is not the final word on the claimant's disability," as her opinion may lack objectivity due to her desire to help her patient. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ may therefore discount that physician's opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent," provided that the ALJ

"minimally articulates his reasons for crediting or rejecting evidence of disability." *Id.* (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Even if an ALJ determines that a treating physician's opinion does not deserve controlling weight, the ALJ must still determine whether the opinion is entitled to consideration under a lesser measure of deference. *See* 20 C.F.R. § 404.1527(c)(2); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). In making this determination, an ALJ is to examine the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; (5) the specialization of the treating source; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)–(6). An ALJ may not reject the physician's opinion on the basis of conjecture or speculation. *Moss*, 555 F.3d at 561.

### B. Analysis

ALJ Schwartz rejected certain opinions by Drs. Hajjar and Morse in the Multiple Impairment Questionnaires they submitted on Huggins's behalf because they were inconsistent with evidence in the record, and instead based his determination on "objective medical findings and reasonable limitations deduced therefrom." R. 26. Specifically, the ALJ rejected Dr. Hajjar's opinion that Huggins would need two to three unscheduled breaks and would miss more than three days of work per month, explaining that Dr. Hajjar had relied heavily on Huggins's report of his symptoms and limitations. R. 27. That Dr. Hajjar's opinion corresponds with Huggins's subjective complaints does not necessarily mean, however, that it lacks objective scientific support. Indeed, Dr. Hajjar noted "positive clinical findings" of shortness of breath, chest tightness, wheezing, edema, episodic acute asthma, fatigue, and coughing, R. 907, and indicated that echocardiogram results supported his diagnosis, R. 908. By contrast, the ALJ

8

never identifies which particular "objective medical findings" undermine Dr. Hajjar's conclusion, nor how they do so.

Similarly, the ALJ rejected Dr. Morse's opinion that Huggins would miss several days of work and would need extra breaks, because Dr. Morse did not specifically explain how these limitations arose from the medical tests and studies Huggins underwent. R. 27. The ALJ also rejected Dr. Morse's opinion that Huggins suffered from limitations in the claimant's ability to grasp items and use his arms because the record did not indicate that Dr. Morse had treated Huggins for any impairment of his hands or arms, or that Huggins complained of limitations or pain in those areas. R. 26. According to the ALJ, the limitations endorsed by Dr. Morse appeared to be based on Huggins's opinion of his abilities rather than medical findings. R. 27. Like Dr. Hajjar, however, Dr. Morse based his Questionnaire opinions on "positive clinical findings" of shortness of breath under any degree of exertion, R. 856, as well as the results of pulmonary function testing, a CT scan of Huggins's chest, and an echocardiogram, among other tests. R. 857. The ALJ does not explain how such clinical findings and test results fail to support Dr. Morse's conclusions—even if they also account for Huggins's subjective reports— nor what "objective medical evidence" elsewhere in the record contradicts Dr. Morse's opinion. *See Gudgel*, 345 F.3d at 470.

The ALJ therefore fails to adequately explain the inconsistencies between both physicians' Questionnaire opinions and the record that justify rejecting those opinions. *See Clifford*, 227 F.3d at 870. Moreover, the ALJ articulated no basis for finding that the physicians' opinions reflected only Huggins's subjective biases, and not the cited medical evidence. *See Moss*, 555 F.3d at 560–61. Finally, assuming arguendo that the doctors' opinions were not entitled to controlling weight, the ALJ failed to explain why some lesser deference was not

9

accorded them under the multi-factor analysis required by Social Security regulation. *See* 20 C.F.R. § 404.1527(c)(2)–(6); *Moss*, 555 F.3d at 561. Accordingly, this case is remanded to the ALJ to explain how he weighs the opinions of Huggins's treating physicians.

## II. Credibility Determinations

The ALJ found that Huggins statements as to the debilitating effects of his symptoms "are not credible to the extent that they are inconsistent with" his RFC. R. 22. In addition to the ALJ's use of this discouraged "boilerplate language," *see, e.g.*, *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013), Huggins argues that the ALJ erred by rejecting Huggins's testimony about limitations imposed by his symptoms, particularly his (1) sleep apnea and episodes of dizziness, (2) respiratory ailments, and (3) DVT. Pl.'s Mem. in Supp. Mot. Summ. J. 14–15.

### A. Legal Standard

A claimant can establish the severity of his symptoms on the basis of his own testimony. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). If a claimant's testimony regarding his symptoms is not "substantiated by objective medical evidence," the ALJ must determine the credibility of these statements in light of the entire record. *See* SSR 96-7p. The "entire record" includes "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold*, 473 F.3d at 823 (citation and internal quotation marks omitted). An ALJ may not discredit testimony regarding the severity of symptoms on the sole basis of lack of objective medical evidence. *Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014).

The ALJ must state enough of the rationale underlying his credibility determination so the claimant and reviewing bodies understand why the credibility determination was reached.

10

*See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). The ALJ's credibility determination is entitled to deference if it is supported by "substantial and convincing evidence." *Arnold*, 473 F.3d at 823. An ALJ's determination is subject to reversal only if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). This Court's review is confined to the rationales offered by the ALJ. *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943).

### B. Analysis

Formulaically stating the inconsistency between claimed symptoms and the ALJ's RFC finding is on its own insufficient to support a credibility determination. *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012). However, use of such "boilerplate" language does not automatically invalidate the ALJ's conclusion "if he otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at 367–68. Here, the ALJ explained his credibility determinations on the basis of specific evidence in the record that contradicted Huggins's assertions, as explained below, and therefore the ALJ's use of the "boilerplate" phrasing, while regrettable, is not reversible error.

#### 1. Sleep Apnea and Dizziness

The ALJ discredited Huggins's claims as to the limitations imposed by Huggins's sleep apnea on the basis of objective medical evidence and Huggins's own reports of improvement. *See Arnold*, 473 F.3d at 823. The ALJ found that Huggins's sleep apnea "responded well to the CPAP machine" and that his sleep apnea "is well controlled and does not preclude all work activity." The ALJ cited reports from Huggins, echoed by his doctor, that the CPAP therapy helped mitigate his sleep apnea, including reducing daytime sleepiness and nonrestorative sleep. R. 24. The ALJ also looked to the results of the August 27, 2009 Illinois Lung Institute sleep study Huggins underwent, which demonstrated that CPAP use increased Huggins's sleep

efficiency and allowed for a "fair amount" of REM sleep. *Id.* Additionally, the ALJ noted, Huggins drove a few times a week, a risk he would not likely take if his daytime sleepiness was debilitating. R. 24. Huggins argues that this evidence does not contradict his claims that he sleeps only two to three hours per night, which on its own results in fatigue limiting his ability to work a full-time job. Pl.'s Mem. in Supp. Mot. Summ. J. 15 (citing R. 58). However, in light of the substantial record evidence that treatment had improved Huggins's sleep apnea and led to better quality sleep, the ALJ's rejection on this basis of Huggins's testimony regarding his sleep—to the extent it indicates he is incapable of performing even the limited work provided for in his RFC—is not patently wrong. *See Jones*, 623 F.3d at 1160.

In addition to fatigue from lack of sleep, Huggins claims his dizziness precludes his ability to work. Pl.'s Mem. in Supp. Mot. Summ. J. 15. Here too, the ALJ explained his rejection of Huggins's testimony on the basis of medical evidence and Huggins's statements to his doctors. The ALJ noted: a head CT scan revealed no abnormalities; after receiving treatment for his other impairments, Huggins reported improvement with his dizziness, which he said was reduced to three to four occurrences per week; and Huggins's physician had only advised Huggins against climbing ladders or working at a height, which implied that nonelevated work was possible. R. 25. Therefore, the ALJ did not obviously err in discounting Huggins's testimony regarding the limitations imposed by his dizziness.

### 2. Respiratory Symptoms and Cigarette Smoking

The Seventh Circuit discourages discrediting claimants on the basis of their failure to quit smoking. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). There must at least be medical evidence directly linking the smoking to the claimant's symptoms. *See id.* Even with such evidence, given nicotine's

addictive nature, "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible" when he testifies to the severity of a symptom. *Id.*

In finding that Huggins's restrictive airway disease and COPD were not totally disabling, the ALJ noted that Huggins "continues to smoke a pack of cigarettes per day, as he has done for several years, despite being informed that this was a large contributor to his symptoms." R. 24. At least one of his physicians, Dr. Penelope Eubank, who Huggins consulted regarding his asthma, determined that smoking was a large contributor to Mr. Huggins's respiratory symptoms and "strongly encouraged" him to quit. R. 653–54. The ALJ was therefore justified in taking Huggins's smoking into consideration because medical evidence established the requisite link between cigarette use and Huggins's symptoms. *See Shramek*, 226 F.3d at 813.

On its own, Huggins's continued smoking would be "an unreliable basis on which to rest a credibility determination." *See id.* However, the ALJ's credibility determination regarding Huggins's respiratory conditions did not turn on smoking, but rested on the weight of the record evidence as a whole, including medical findings and Huggins's reports to his doctors. *See* SSR 96-7p; *Arnold*, 473 F.3d at 823. The ALJ cited: physician findings that Huggins's lungs were clear, and that he lacked substantial rales, rhonchi or wheezing; pulmonary function testing establishing that Huggins suffered only "moderate restriction"; Huggins's lack of daytime oxygen supplementation, or clubbing or cyanosis of his extremities; the absence of frequent emergency room or hospital visits based on his respiratory symptoms, with Huggins suffering "only mild wheezes" and "no acute distress" in the only such visit of note; and Huggins's reports to his doctors that treatment and/or time away from welding had helped reduce the severity of his symptoms. R. 24. Therefore, even if the Court ignores the link the ALJ found between Huggins's smoking and his symptoms, the ALJ supported his credibility determination with

13

substantial and convincing other record evidence such that the Court cannot say his finding was patently wrong. *See Jones*, 623 F.3d at 1160; *Arnold*, 473 F.3d at 823.

### 3. Deep Vein Thrombosis

Huggins disputes the ALJ's alleged finding of "no evidence of complications" from Huggins's DVT. Pl.'s Mem. in Supp. Mot. Summ. J. 15. However, the ALJ's actual determination was narrower: the record did not support a claim that the DVT precluded all work activity. R. 25. In discrediting Huggins's testimony to the contrary, the ALJ examined: evidence that even though the DVT began during Huggins's childhood, it did not prevent Huggins from welding for Caterpillar from 2002 to 2009, a job with a medium exertion level; Huggins's statement in 2009 that his last DVT occurred three years prior, and that he lacked any history of pulmonary emboli; a 2010 chest CT scan that similarly indicated no acute emboli; and Huggins's decision against a right-heart catheterization given its risks and the stability of his symptoms. R. 25. Given this marshaling of substantial record evidence, the Court has no basis for finding that, in discrediting Huggins's claimed total inability to work due to his DVT, the ALJ was patently wrong. *See Jones*, 623 F.3d at 1160; *Arnold*, 473 F.3d at 823.

## CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF No. 6, is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Summary Affirmance, ECF No. 9, is also GRANTED IN PART and DENIED IN PART. This case is remanded to the ALJ for further proceedings consistent with this order.

Entered this 19th day of August, 2014.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE